FILED
 2017 Mar-15  AM 09:58
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JACOB GELBER, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:15-cv-00571-MHH |
| | } |
| BOARD OF TRUSTEES OF THE | } |
| UNIVERSITY OF ALABAMA | } |
| SYSTEM, et al., | } |
| | } |
| Defendants. | } |

**<u>MEMORANDUM OPINION AND ORDER</u>**

    This is an employment discrimination case. Plaintiff Jacob Gelber alleges that his former employer, the University of Alabama at Birmingham or UAB, discriminated against him because he is Jewish. Mr. Gelber also contends that Dr. Lary Cowart, an Assistant Professor of Real Estate and Finance in UAB's business school's Department of Accounting and Finance, tortiously interfered with Mr. Gelber's contractual or business relationship with UAB.[1] Mr. Gelber asserts his claim against Dr. Cowart in Dr. Cowart's individual capacity. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Dr. Cowart asks the Court to dismiss Mr.

---

[1] At the time of the events alleged in the second amended complaint, Dr. Cowart was the interim department chair of the Department of Accounting and Finance. Currently, Dr. Cowart is an assistant professor. (*Compare* Doc. 31, ¶ 14 *with* Doc. 35, ¶ 2).

1

Gelber's tortious interference claim on the basis of state-agent immunity.[2] (Doc. 35). For the reasons explained below, the Court denies Mr. Cowart's motion to dismiss but asks Mr. Gelber to show cause why the Court should not dismiss his tortious interference claim for failure to state a claim.

## I. STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds

---

[2] The Court previously dismissed all of Mr. Gelber's claims against the defendants except for his Title VII claims against the Board of Trustees of the University of Alabama System and his tortious interference claim against Dr. Cowart. (*See* Doc. 51; Doc. 54). This opinion concerns only Mr. Gelber's tortious interference claim against Dr. Cowart.

upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).

## II.  FACTUAL BACKGROUND[3]

Mr. Gelber is an Ashkenazi Jewish male. (Doc. 31, ¶ 1). On January 7, 2009, the UAB School of Business hired Mr. Gelber as an instructor. (Doc. 31, ¶¶ 9, 10). In addition to teaching classes, UAB asked Mr. Gelber to work with a newly formed Jewish student organization in the business school and to serve as an advisor for the Green and Gold Fund. (Doc. 31, ¶¶ 10-12). The Fund is a student-led financial investment fund that operates under the guidance of faculty. (Doc. 31, ¶ 11).

Dr. Cowart was the faculty supervisor of the Green and Gold Fund. (Doc. 31, ¶ 14). Consequently, Dr. Cowart supervised Mr. Gelber's work as the Fund's advisor. (Doc. 31, ¶ 14). Soon after Mr. Gelber began advising students working on the Fund, Mr. Gelber alleges that he "observed deficiencies in the internal controls of the Fund." (Doc. 31, ¶ 15). Mr. Gelber approached Dr. Cowart several

---

[3] Because this opinion addresses only Count XVI of the second amended complaint, the facts in this opinion pertain only to Mr. Gelber's tortious interference claim against Dr. Cowart.

times to discuss these deficiencies and other matters related to the Fund. (Doc. 31, ¶¶ 15, 18).

Mr. Gelber contends that after he tried to bring these issues to Dr. Cowart's attention, Dr. Cowart took a number of actions that hampered Mr. Gelber's ability to fulfill his responsibilities as an advisor to the Fund. (Doc. 31, ¶¶ 16, 19). For example, Dr. Cowart refused to provide to Mr. Gelber the Fund's policies, monthly statements, broker charges, and holdings and commissions. (Doc. 31, ¶ 16). Moreover, Mr. Gelber asserts that Dr. Cowart "insisted on paper trade confirmations, not real-time electronic confirmations, which obstructed the Fund's ability to operate efficiently." (Doc. 31, ¶ 16). According to Mr. Gelber, this impeded his "ability to ascertain the Fund's actual, real-time cash balances." (Doc. 31, ¶ 16). Based on Dr. Cowart's behavior, Mr. Gelber maintains that he suspected that Dr. Cowart was abusing the Fund to commit criminal acts, such as embezzlement and fraud. (Doc. 31, ¶ 17). Mr. Gelber alleges that Dr. Cowart erected barriers to his work as the Fund's advisor "at least in substantial part" because Mr. Gelber is Jewish. (Doc. 31, ¶ 19).

In December 2012, after Dr. Cowart refused to address Mr. Gelber's concerns, Mr. Gelber and several students met with two deans in School of Business to discuss the problems that they had encountered with Dr. Cowart. (Doc. 31, ¶ 20). The deans did not respond to the complaints. (Doc. 31, ¶ 20). In

January 2013, the Fund's Chief Investment Officer resigned. (Doc. 31, ¶ 21). In the months that followed, because the deans ignored Mr. Gelber's allegations, Mr. Gelber contends that the Fund's problems worsened, and Dr. Cowart's discriminatory behavior toward Mr. Gelber intensified. (Doc. 31, ¶¶ 22, 24).

In late February or early March 2013, a group of accounting students at the School of Business proposed to audit the Fund. (Doc. 31, ¶ 25). Mr. Gelber contends that, in part, his complaints spurred the audit. (Doc. 31, ¶ 25). According to Mr. Gelber, just after hearing about the audit, Dr. Cowart stated: "I am not going to let that kike ruin my career." (Doc. 31, ¶ 26).[4] Mr. Gelber concedes that he does not know to whom Dr. Cowart made the comment. (Doc. 31, ¶ 26). Because Mr. Gelber is Jewish, Mr. Gelber believes that Dr. Cowart used the ethnic slur to refer to him. (Doc. 31, ¶ 43).

On April 24, 2013, before the students completed the audit, Dr. Cowart terminated Mr. Gelber as the Fund's faculty advisor. (Doc. 31, ¶ 29). Mr. Gelber contends that Dr. Cowart retaliated against him because he (Mr. Gelber) is Jewish and because Mr. Gelber complained about Dr. Cowart's discrimination. (Doc. 31, ¶ 29).

---

[4] The term "kike" is recognized commonly as a derogatory term for a Jewish person. *See, e.g., Antipova v. U.S. Atty. Gen.*, 392 F.3d 1259, 1262 (11th Cir. 2004).

On May 6, 2013, the students completed the audit of the Fund. (Doc. 31, ¶ 31). The audit, according to Mr. Gelber, confirmed many of the issues that he had raised with respect to the Fund's operation. (Doc. 31, ¶ 31). Shortly after the audit, UAB removed Dr. Cowart from his position as faculty supervisor to the Fund. (Doc. 31, ¶ 32). On July 11, 2013, the Board discharged Mr. Gelber. (Doc. 31, ¶ 33). Mr. Gelber contends that Dr. Cowart's decision to terminate Mr. Gelber's position as Fund advisor influenced the school's decision to fire him. (Doc. 31, ¶ 19).

## III.   DISCUSSION

Based on the conduct described above, Mr. Gelber contends that Dr. Cowart tortiously interfered with his employment contract with the Board. (Doc. 31, ¶¶ 89–91). Dr. Cowart argues that the Court should dismiss Mr. Gelber's tortious interference claim because he is entitled to state-agent immunity under *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000).[5] The Court disagrees.

State-agent immunity "is a question of law to be decided by the trial court." *Suttles v. Roy*, 75 So. 3d 90, 99 (Ala. 2010) (quoting *Ex parte Sawyer*, 984 So. 2d 1100, 1106–07 (Ala. 2007)) (internal quotation marks and citation omitted). Whether a state employee is entitled to a defense of state-agent immunity turns on the nature of the employee's action. Under Alabama law,

---

[5] In *Ex parte Butts*, the Alabama Supreme Court first articulated the state-agent immunity test. 775 So. 2d 173, 177–78 (Ala. 2000).

> [a] State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> > (1) formulating plans, policies, or designs; or
> >
> > (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
> >
> > > (a) making administrative adjudications;
> > >
> > > (b) allocating resources;
> > >
> > > (c) negotiating contracts; [or]
> > >
> > > (d) hiring, firing, transferring, assigning, or supervising personnel; . . . .
>
> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity
>
> > (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
> >
> > (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman*, 792 So. 2d at 405 (emphasis in original).

The Alabama Supreme Court applies a burden-shifting framework to evaluate a state-agent immunity defense. First, a defendant "must demonstrate that he was acting in a function that would entitle him to immunity." *Grider v. City of*

7

*Auburn, Ala.*, 618 F.3d 1240, 1255 (11th Cir. 2010) (citing *Ex parte Estate of Reynolds,* 946 So. 2d 450, 452 (Ala. 2006)).  If he succeeds, then the burden shifts to the plaintiff to establish that the defendant "acted willfully, maliciously, fraudulently, in bad faith, or beyond his [ ] authority."  *Id.*

Dr. Cowart asserts that his supervision over Mr. Gelber and the Fund "falls squarely within the confines of state-agent immunity."  (Doc. 35, ¶ 55).  Specifically, Dr. Cowart contends that he "exercise[d] judgment in [1] allocating resources, [2] negotiating contracts, [3] terminating personnel, and [4] assigning personnel." (Doc. 35, ¶ 55).  Because the alleged misconduct at issue is based on Dr. Cowart's supervisory functions, Dr. Cowart asserts that he was acting in a function that would entitle him to immunity.  *See Grider*, 618 F.3d at 1255; *Ex parte Estate of Reynolds,* 946 So. 2d at 452.  Mr. Gelber does not appear to challenge Dr. Cowart's contention that he has met his burden of demonstrating that he was acting in a function that would entitled him to immunity. (*See* Doc. 41, pp. 13-15).

At the motion to dismiss stage, Mr. Gelber has sufficiently alleged that Dr. Cowart "acted willfully, maliciously, fraudulently, in bad faith, or beyond his [ ] authority" to avoid dismissal on the basis of immunity.  *Grider*, 618 F.3d at 1255; *Ex parte Estate of Reynolds*, 946 So. 2d at 452.  Mr. Gelber alleges that Dr. Cowart exploited the Fund to commit criminal acts.  (Doc. 31, ¶¶ 16–17).  Based on Mr.

8

Gelber's allegations that Dr. Cowart was abusing the Fund, students audited the Fund. (Doc. 31, ¶ 25). Shortly thereafter, according to Mr. Gelber, Dr. Cowart used a derogatory term, stating that he would not let that "kike ruin [his] career." (Doc. 31, ¶ 26). Dr. Cowart then terminated Mr. Gelber from his position as faculty advisor to the Fund (Doc. 31, ¶¶15–17, 19, 29) which prompted the Board to fire Mr. Gelber. (Doc. 31, ¶¶ 19, 33).

"Generally, a motion to dismiss on grounds of state-agent immunity is premature." *Jones v. Ship*, 2012 WL 4339558, at * 6 (N.D. Ala. Sept. 13, 2012) (citing *Ex parte Dangerfield*, 149 So. 3d 675, 682 (Ala. 2010)). The Court finds no reason to depart from the general rule in this case because Mr. Gelber has alleged adequately that Dr. Cowart acted maliciously and in bad faith. Nevertheless, it appears that Mr. Gelber's tortious interference theory may not be viable under Alabama law.

To state a tortious interference with contractual relations claim under Alabama law, Mr. Gelber must allege: "'(1) the existence of a protectable business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage.'" *Walter Energy, Inc. v. Audley Capital Advisors, LLP*, 176 So. 3d 821, 828 (Ala. 2015) (quoting *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)).

In his second amended complaint, Mr. Gelber asserts (1) that he had a contractual relationship with the Board; (2) that Dr. Cowart had knowledge of that contract; (3) that Dr. Cowart "intentionally disrupted or interfered" with the contract; and that (4) he was damaged when Dr. Cowart terminated him as advisor to the Fund because that triggered the Board decision to discharge him. (Doc. 31, ¶¶ 89–91). Mr. Gelber does not allege that Dr. Cowart was a stranger to Mr. Gelber's contractual relationship with the Board.

Although a plaintiff need not "allege with precision each element of a claim," a plaintiff must assert in his complaint "either direct or inferential allegations" from which the Court "can identify each of the material elements necessary to sustain recovery under some viable legal theory." *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (internal quotation marks and citations omitted). Alabama law is clear: "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' *i.e.*, a 'stranger' to the contract with which the defendant allegedly interfered." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) (citations omitted); *see also McFarlin v. Conseco Services*, LLC, 381 F.3d 1251, 1261 (11th Cir. 2004) (recognizing that, under Alabama law, a defendant's status as a non-party to the relationship is an element of tortious interference claim under Alabama law).

10

A defendant is considered a stranger to a contract or business relationship under Alabama law when "(1) the defendant is [not] an essential entity to the purported injured relations; (2) the allegedly injured relations are [not] inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would [not] benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are [not] parties to a comprehensive interwoven set of contract or relations." *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1156 (Ala. 2003). Moreover, in a case like this, in which a plaintiff asserts a tortious interference claim against a manager or officer of his employer, a plaintiff must allege that the manager or officer "was acting outside the scope of employment and with actual malice at the time of the interference." *Pegram v. Hebding*, 667 So. 2d 696, 701 (Ala. 1995); *see also Rhodes v. Unisys Corp.*, 170 Fed. Appx. 681, 685 (11th Cir. 2006) ("[I]n the context of a corporate employee interfering with a contract of the corporation, the plaintiff must also show that the employee acted outside the scope of his employment and that the employee acted with actual malice.").

To show actual malice, "'the plaintiff must make a strong showing of a pattern of interference.'" *Rhodes*, 170 Fed. Appx. at 685 (quoting *Hanson v. New Tech.*, Inc., 594 So. 2d 96, 102 (Ala. 1992) (affirming district court's denial as futile of a motion to amend a complaint to state a tortious interference claim

11

because an "allegation of a single act of interference is insufficient to satisfy Alabama's requirement that that there be a pattern of interference")).

Based on the Court's review of Mr. Gelber's second amended complaint, it does not appear that Mr. Gelber has stated "either direct or inferential allegations" to suggest that Dr. Cowart was a stranger to the contractual relationship between Mr. Gelber and UAB or to suggest that Dr. Cowart acted with actual malice. *Aware Woman Ctr. For Choice, Inc.*, 253 F.3d at 683. Accordingly, the Court asks Mr. Gelber to show cause why the Court should not dismiss his tortious interference claim. *Danow v. Borack*, 197 Fed. Appx. 853, 856 (11th Cir. 2006) (district court may *sua sponte* dismiss a claim where the court "provide[s] notice of its intent to dismiss the claims for failure to state a claim and an opportunity for [the plaintiff] to respond prior to dismissing the claims"); *see generally* Fed. R. Civ. P. 8(a)(2) (requiring pleader to provide a "statement of the claim" that shows that "the pleader is entitled to relief.").

## IV.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Dr. Cowart's Rule 12(b)(6) motion to dismiss. **On or before March 30, 2017,** Mr. Gelber shall **SHOW CAUSE** in writing why the Court should not dismiss his tortious interference with contractual relations claim because he has not stated a claim upon which relief can be granted.

**DONE** and **ORDERED** this March 15, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE